## CZAPP v COX

Docket No. 104203. Submitted January 11, 1989, at Detroit. Decided
    August 8, 1989.

Andrew Czapp, father of Wesley Czapp and Anna C. Cox, died
    testate. Under the terms of the decedent's will, which was
    probated without dispute, Wesley Czapp and Anna C. Cox were
    each bequeathed one half of the decedent's 136.7-acre farm. The
    bequest to Cox was subject to the following provision in the
    will: "The bequest to my daughter . . . shall be subject to an
    option, which I hereby give and bequeath to my son, Wesley
    Czapp, to lease for farming purposes the one-half interest in
    any real estate herein bequeathed to my daughter Anna C.
    Cox, and further a first option to purchase said one-half inter-
    est . . . at the fair market value of said real estate at the time
    of exercising option to purchase. This option shall be valid
    during the lifetime of my said son . . . ." Wesley Czapp subse-
    quently informed Cox that he wished to exercise the option to
    purchase Cox's parcel. Cox refused to sell and Wesley Czapp
    brought an action in Macomb Circuit Court against Cox, who
    then filed a counterclaim against Wesley and Frances Czapp.
    The court, Kenneth N. Sanborn, J., denied defendant's motion
    for summary judgment for failure to state a claim. Following a
    bench trial, the court entered a judgment in favor of plaintiff
    and ordered defendant to sell her parcel to plaintiff. Defendant
    appealed.

The Court of Appeals *held:*

A proper construction of the will in this case, in particular
    the terms "first option to purchase," indicates that the option
    to purchase is conditioned on defendant's willingness to sell the
    disputed parcel.

Reversed.

1. Wills — Judicial Construction — Intent.
    The fundamental precept which governs judicial review of a will

References
Am Jur 2d, Contracts §§ 12, 32, 60; Wills §§ 1127 *et seq.*
Time in which option created by will to purchase real estate is to be
    exercised. 82 ALR3d 790.
Option created by will to purchase real estate. 44 ALR2d 1214.

is that the intent of the testator is to be carried out as nearly as possible; intent is to be gleaned from the will itself unless an ambiguity is present; the presence of an ambiguity requires a court to look outside the four corners of the will in order to carry out the testator's intent.

2. WILLS — JUDICIAL CONSTRUCTION — RULES OF CONSTRUCTION.

Rules used by courts in interpreting contracts are equally applicable when interpreting wills; a cardinal principle of construction is that a contract is to be construed as a whole, and all parts are to be harmonized as far as possible; every word must be taken to have been used for a purpose and no word should be taken as surplusage if the court can discover any reasonable purpose for it which can be gathered from the whole instrument.

3. CONTRACTS — OPTION TO PURCHASE — CONDITIONAL OPTION — FIRST OPTION.

The words "first option," used when granting a lessee the first option to purchase the leased property, indicate an option conditioned on the lessor's willingness to sell.

*James T. Miller,* for Wesley and Frances Czapp.

*Daniel J. Stepek,* and *Jerald R. Lovell,* of Counsel, for Anna C. Cox.

Before: MURPHY, P.J., and MACKENZIE and REILLY, JJ.

MACKENZIE, J. Defendant Anna Cox appeals as of right from a judgment granting specific performance in favor of plaintiff. We reverse.

Andrew Czapp, the father of plaintiff and defendant, died testate in 1976. His estate included a 136.7-acre farm. Czapp's will, which was probated without dispute, made the following disposition:

1. One half of said estate to my son, Wesley Czapp, or should he predecease me, said one-half share to his wife and children in equal shares, living at the time of my death.
2. One half of said estate to my daughter, Anna

C. Cox, or should she predecease me, to her heirs by representation.

PROVIDED, this bequest is subject to the option contained in the following paragraph.

3. The bequest to my daughter mentioned in subparagraph 2 above, shall be subject to *an option,* which I hereby give and bequeath to my son, Wesley Czapp, *to lease* for farming purposes the one-half interest in any real estate herein bequeathed to my daughter Anna C. Cox, *and further a first option to purchase* said one-half interest in any real estate herein bequeathed to my daughter, Anna C. Cox, at the fair market value of said real estate at the time of exercising option to purchase. This option shall be valid during the lifetime of my said son, Wesley Czapp. [Emphasis added.]

In November, 1981, plaintiff informed defendant that he wished to exercise his option to purchase defendant's one-half interest in the farm. Defendant refused to sell, contending that the "first option to purchase" granted to plaintiff under Czapp's will did not provide plaintiff with an absolute option to purchase the property, but a right of first refusal should defendant decide to sell her one-half interest. This suit for specific performance followed.

Defendant moved for summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8), contending that, since plaintiff had a right of first refusal and not an absolute option, he had failed to state a claim upon which relief could be granted. The trial court denied the motion, ruling that factual development was needed to determine the meaning of "first option to purchase." On appeal, defendant argues that the denial of her motion constitutes error requiring reversal. We agree.

The fundamental precept which governs judicial review of a will is that the intent of the testator is to be carried out as nearly as possible. *In re Kremlick Estate,* 417 Mich 237, 240; 331 NW2d 228 (1983), reh den 417 Mich 1143 (1983); *In re Allen Estate,* 150 Mich App 413, 415; 388 NW2d 705 (1986). The intent of the testator is to be gleaned from the four corners of the document. *In re Elwen Estate,* 144 Mich App 423, 424-426; 375 NW2d 738 (1984). If an ambiguity is present, the court must look outside of the four corners of the will in order to carry out the intent of the testator. *Kremlick, supra.* The rules in interpreting contracts are equally applicable to interpreting wills. *Kremlick, supra.* A cardinal principle of construction is that a contract is to be construed as a whole, and all parts are to be harmonized as far as possible. *Associated Truck Lines, Inc v Baer,* 346 Mich 106, 110; 77 NW2d 384 (1956); *Laevin v St Vincent de Paul Society of Grand Rapids,* 323 Mich 607, 609; 36 NW2d 163 (1949). Every word must be taken to have been used for a purpose and no word should be taken as surplusage if the court can discover any reasonable purpose for it which can be gathered from the whole instrument. *Laevin,* p 610; *Associated Truck Lines, supra.*

Michigan courts have had at least three opportunities to construe the terms "first option" or "first privilege." In each case, the meaning of the phrase was gleaned from the four corners of the instrument granting the option.

In *Laevin, supra,* a lease granted the plaintiffs a "first privilege of re-leasing." The plaintiffs contended this language gave them an unconditional right to renew their lease. The Supreme Court disagreed, stating that "first privilege" and "privilege" could not be equated, and that "first privilege" conveyed a conditional option:

In *Draper v Nelson,* 254 Mich 380, 383 [236 NW 808 (1931)], the Court said:

" 'Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.' 6 RCL p 838, quoted in *McIntosh v Groomes,* 227 Mich 215, 218 [198 NW 954 (1924)]."

Hence, *some significance must be attached to the language giving plaintiffs the "first" privilege of releasing the premises. If the word "first" be eliminated, the lease would give plaintiffs the "privilege of re-leasing said premises," and an option to do so. However, the word "first" does have a meaning which can be given a definite effect.* "First," as used in this lease implies a priority in the plaintiffs, it signifies that they, before all others, shall have the privilege of releasing. Plaintiffs, however, would read the disputed phrase to give them an absolute option to re-lease, much the same as if the word "first" were omitted.

\* \* \*

It would be of little value to here attempt an analysis of the decisions from other States. Many of them are distinguishable, and suffice it to say that the majority apparently adopt a construction which, in the absence of other details, holds *"first" privilege of re-leasing to mean an option conditioned upon the lessor's willingness to re-lease.* See *Edwards v Bernstein,* 238 Ky 38 (36 SW [2d] 662) [1931]; *Pearce v Turner,* 150 Ill 116 (36 NE 962) [1892]; *Walsh v Fort Schuyler Brewing Co,* 83 Misc 488 (146 NY Supp 160) [1914]; *Cloverdale Co v Littlefield,* 240 Mass 129 (133 NE 565) [1921]; *Hill v Prior,* 79 NH 188 (106 Atl 641) [1919]; *Buddenberg v Welch,* 97 Ind App 87 (185 NE 865) [1933].

*The preferable construction is that the words here in question constitute a conditional option only.* As was said by the New York court in *Holloway v Schmidt,* 33 Misc 747 (67 NY Supp 169) [1900]:

"The words, 'first privilege of a renewal,' as used in the lease, meant the prior right to a lease of five years upon terms the same as those in the lease of 1895, provided the landlord should give a lease."

As was said in *Lehr v Professional Underwriters,* 296 Mich 693, 697 [296 NW 843 (1941)]:

*"To hold otherwise would be to write a new contract for the parties. This we have no right to do."*

The provision in the lease here under consideration does not give the lessees an unconditional option to re-lease, and plaintiffs are not entitled to a decree compelling the defendant to re-lease the premises. [323 Mich 610, 613-614. Emphasis added.]

In *Ackerman Electrical Supply Co v Koukious,* 16 Mich App 527; 168 NW2d 433 (1969), a lease granted the plaintiff a "first option to purchase" the leased property and an "option to renew" the lease. The plaintiff contended that the "first option to purchase" was absolute, while the defendant lessor maintained that it was conditioned upon his willingness to sell. This Court concluded from the language of the lease that the "first option to purchase" was a conditional option, contingent upon the will or desire of the optionor to sell and thus not subject to enforcement as an absolute option for purchase of the mortgage. Adopting the opinion of the trial court, the *Ackerman* Court stated:.

In paragraph 5, the lessor did use the expression *first option* which expression will control and which must be given effect if possible, and is not to be stricken by some other part unless such a result is fairly inescapable.

These words indicate an option conditioned on lessor's willingness to sell.

Paragraph 5 sets a definite price ($30,000) for a one-year period. Does this operate to change the legal presumption created? . . .

In the case of *R I Realty Co, Inc v Terrell* (1930), 254 NY 121 (172 NE 262), the lease contained a clause which reads:

"Said party of the second part is given first privilege to buy said property for the sum of $14,000."

The court held that:

"The use of the words 'first privilege' indicates that the parties must have had in mind some other opportunity of the lessor to sell and that the lessor was not prevented from selling to another if he desired. It bound the lessor, however, not to sell to another for that price without first giving the lessee the opportunity or privilege to purchase the property at the price specified, and, if the lessee did not exercise the privilege to purchase, the lessor was free to sell to anyone else. *The words 'first privilege' did not grant an absolute option to the lessee to purchase the premises at any time during the term of the lease. The right of the lessee to purchase depended upon the lessor's desire to sell.* If the lessor desired to sell at the price named, then the lessee was to have the 'first privilege to buy' at the figure specified.

"In construing the clause in question the court is required to give some meaning to all the words used. *To construe the clause in accordance with the contention of the respondent would require that the word 'first' be eliminated.* With that word eliminated, the privilege to buy would be absolute and enforceable. *Sandberg v Reilly* (1928), 223 App Div 57 (227 NYS 418), affirmed 250 NY 547 (166 NE 319) [1929]. Therefore, it must have been used to prevent the agreement from constituting an absolute option to sell. . . ."

\* \* \*

In paragraph 7 of the lease when the lessee was given the option to renew the lease on the same terms and conditions for a like period, the word

"first" does not appear. This further strengthens the opinion of this court that the word "first" in paragraphs 5 and 6 was used in its technical sense. [16 Mich App 529-532, 532. Emphasis added.]

In *Associated Truck Lines, supra,* the plaintiff lessee entered into a fifteen-year lease with the defendants. At the same time the defendants gave the plaintiff a separate "first right and option to purchase" commencing the third year of the lease. Quoting *Laevin, supra,* the Court reiterated that the word "first" must be given effect if possible and is not to be stricken or rejected as mere surplusage unless no reasonable purpose for its inclusion can be gathered from the whole instrument. See 346 Mich 111-112. In *Associated Truck Lines,* the Court concluded that there was no logical way to read the term "first option to purchase" as a conditional option:

Here, to give [conditional] effect to the word "first" . . . would be to fly in the face of the provision in the option that plaintiff was not permitted to exercise it during the first 2 years of the term of the lease. To hold the option conditional upon optionors' willingness to sell would render that provision meaningless and without purpose. Why expressly deny plaintiff the right to exercise the option for 2 years, if, at all events, plaintiff could at no time exercise it unless optionors were willing? [346 Mich 110-111.]

It is clear from the above cases that the term "first option" means a conditional option or right of first refusal, unless it is not possible to reconcile that meaning with other portions of the instrument creating the option when read as a whole.

In this case, there is nothing in Czapp's will which would preclude reading the "first option to purchase" granted to plaintiff as a conditional

option or right of first refusal. The language in the will indicating that plaintiff must purchase the property at fair market value at the time of exercising the option to purchase does not contradict such a reading. As in *Ackerman,* it merely has the effect of requiring defendant not to sell to another without first giving plaintiff the opportunity to purchase defendant's interest for its fair market value, and if plaintiff did not exercise his option to purchase the interest at fair market value, defendant would be free to sell to someone else.

Moreover, as in *Ackerman,* the proviso's inclusion of both "an option to lease" and a further "first option to purchase" strengthens the presumption that the term "first option" was used in its legally recognized sense. To equate the absolute option with the "first option" is to read out the word "first" and rewrite Czapp's will.

The proviso in Czapp's will granting plaintiff a "first option to purchase" must be given its legally recognized and well-established meaning. The will, when read as a whole, gave plaintiff a conditional option or right of first refusal in the event defendant decided to sell her one-half interest in the property. Thus, as a matter of law, plaintiff was not entitled to a judgment compelling defendant to sell her interest.

Our disposition makes it unnecessary to consider defendant's remaining claims on appeal.

Reversed.