*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MICHAEL EYDE TRUST.

---

WILLIAM JOSEPH COSTELLO, Trustee,

        Appellant,

v

RICHLAND ANIMAL RESCUE, INC., CAROL
PALINSKI HILDEBRAND, ELIZABETH DALY
UNIS, JULIE BAKER, and ATTORNEY
GENERAL,

        Appellees.

UNPUBLISHED
January 27, 2022

No. 355947
Clinton Probate Court
LC No. 20-030844-TV

---

*In re* MICHAEL EYDE TRUST.

---

WILLIAM JOSEPH COSTELLO, Trustee,

        Appellant,

v

RICHLAND ANIMAL RESCUE, INC., CAROL
PALINSKI HILDEBRAND, ELIZABETH DALY
UNIS, and JULIE BAKER,

        Appellees.

No. 356500
Clinton Probate Court
LC No. 20-030844-TV

---

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

-1-

In Docket No. 355947, appellant, William Joseph Costello, trustee of the Michael Eyde Trust (the Trust), appeals as of right an order denying Costello's motion for summary disposition, in which he had alleged a lack of subject-matter jurisdiction over an objection raised by appellee Richland Animal Rescue, Inc. (Richland), to a change of situs of the Trust from Michigan to Illinois. In Docket No. 356500, Costello purports to appeal as of right[1] a later order requiring him to provide immediately the Eyde estate's tax form (form 706) to the beneficiaries listed in the Trust, i.e., Julie Baker, Christopher Joseph Palinski (Christopher), Carol Palinski Hildebrand, Elizabeth Daly Unis, and Richland. We reverse in part and remand.[2]

## I. DOCKET NO. 355947

In Docket No. 355947, Costello, primarily relying on Trust documents and statutory law, argues that the trial court erred by concluding that it had subject-matter jurisdiction over the proceedings. This Court reviews de novo whether a court has subject-matter jurisdiction and also reviews de novo issues of statutory construction and decisions regarding motions for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013); *Piccione v Gillette*, 327 Mich App 16, 18-19; 932 NW2d 197 (2019). Also subject to de novo review is "the proper interpretation of a trust." *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013).

In general, "[s]ubject matter jurisdiction in particular is defined as the court's ability to exercise judicial authority over that class of cases; not the particular case before it but rather the abstract power to try a case of the kind or character of the one pending." *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990) (quotation marks and citations omitted). "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242; 134 NW2d 146 (1965). "Probate courts are courts of limited jurisdiction. Const 1963, art 6, § 15. The jurisdiction of the probate court is defined entirely by statute." *In re Wirsing*, 456 Mich 467, 472; 573 NW2d 51 (1998).

MCL 700.7203(1) states that the probate court "has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust as provided in section 1302(b) and (d)." MCL 700.1302 states, in part:

> The court has exclusive legal and equitable jurisdiction of all of the following:

> * * *

---

[1] A question has been raised regarding whether Costello has an appeal as of right in Docket No. 356500. This question is discussed *infra*.

[2] We reverse and remand in Docket No. 355947. As explained *infra*, while Costello has not raised meritorious arguments about the order at issue in Docket No. 356500, its viability is dependent on further proceedings.

(b) *A proceeding that concerns* the validity, internal affairs, or settlement of a trust; *the administration*, distribution, modification, reformation, or termination *of a trust*; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:

(*i*) Appoint or remove a trustee.

(*ii*) Review the fees of a trustee.

(*iii*) Require, hear, and settle interim or final accounts.

(*iv*) Ascertain beneficiaries.

(*v*) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

(*vi*) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.

(*vii*) Release registration of a trust.

(*viii*) Determine an action or proceeding that involves settlement of an irrevocable trust.

\* \* \*

(d) A proceeding to require, hear, or settle the accounts of a fiduciary and to order, upon request of an interested person, instructions or directions to a fiduciary that concern an estate within the court's jurisdiction. [Emphases added.]

However, MCL 700.7205(1) provides:

If a party objects, the court shall not entertain a proceeding under section 7203 that involves a trust that is registered or that *has its principal place of administration in another state*, unless either of the following applies:

(a) All appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration.

(b) The interests of justice would otherwise be seriously impaired. [Emphasis added; citation omitted.]

Given the language of MCL 700.7205(1), an important question to be answered is whether the Trust did, in fact, have its principal place of administration in another state by virtue of what Costello did before any proceedings were initiated.

MCL 700.7105(1) states, "*Except as otherwise provided in the terms of the trust*, this article governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a trust beneficiary." (Emphasis added.) Costello argues that the terms of the Trust (discussed

shortly, *infra*) allowed him to transfer the principal place of administration of the trust to Illinois without following the notice requirements set forth in MCL 700.7108. MCL 700.7108 states:

(1) Without precluding other means for establishing a sufficient connection with the designated jurisdiction, terms of a trust designating the principal place of administration are valid and controlling if any of the following apply:

(a) A trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction.

(b) A trust director's principal place of business is located in, or a trust director is a resident of, the designated jurisdiction.

(c) All or part of the administration occurs in the designated jurisdiction.

(2) A trustee is under a continuing duty to administer the trust at a place appropriate to its purposes, its administration, and the interests of the qualified trust beneficiaries.

(3) Without precluding the right of the court to order, approve, or disapprove a transfer, the trustee, in furtherance of the duty prescribed by subsection (2), may transfer the trust's principal place of administration to another state or to a jurisdiction outside of the United States.

(4) The trustee shall notify the qualified trust beneficiaries in writing of a proposed transfer of a trust's principal place of administration not less than 63 days before initiating the transfer. The notice of proposed transfer must include all of the following:

(a) The name of the jurisdiction to which the principal place of administration is to be transferred.

(b) The address and telephone number at the new location at which the trustee can be contacted.

(c) An explanation of the reasons for the proposed transfer.

(d) The date on which the proposed transfer is anticipated to occur.

(e) In a conspicuous manner, the date, not less than 63 days after the giving of the notice, by which a qualified trust beneficiary must notify the trustee in writing of an objection to the proposed transfer.

(5) The authority of a trustee under this section to transfer a trust's principal place of administration without the approval of the court terminates if a qualified trust beneficiary notifies the trustee in writing of an objection to the proposed transfer on or before the date specified in the notice.

(6) In connection with a transfer of the trust's principal place of administration, the trustee may transfer some or all of the trust property to a successor trustee designated in the terms of the trust or appointed under section 7704.

(7) The view of an adult beneficiary must be given weight in determining the suitability of the trustee and the place of administration.

Appellees contend that Costello needed to follow this statute and that the lack of 63 days of notice, as required by MCL 700.7108(4), rendered his attempt to transfer the principal place of administration from Michigan to Illinois ineffective.[3] Costello relies, instead, on MCL 700.7105(1) and on the following language from the article of the Trust labeled "administrative powers":

Trustee has the power to perform every act that a reasonable and prudent investor would perform incident to the collection, preservation, management, use, and distribution of the trust assets to accomplish the desired result of administering the trust legally and in the best interest of the trust beneficiaries, without the approval of any court or beneficiary. . . . Trustee possesses . . . the authority to:

\* \* \*

7.31 **Situs of Trust.** Change the situs and principal place of administration of any trust under this Agreement by notice to each current beneficiary; if a trust under this Agreement is registered, it may be registered in Ingham County, Michigan, in the jurisdiction in which the trust is being administered, or in a jurisdiction in which any trustee resides . . . .

"When construing a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor. Absent ambiguity, the words of the trust document itself are the most indicative of the meaning and operation of the trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012) (quotation marks and citation omitted). "[I]ntent [of the settlor] is gauged from the trust document itself, unless there is ambiguity." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008). In *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005), this Court stated that "[t]he rules of construction applicable to wills also apply to the interpretation of trust documents." The *Reisman* Court added that a "court may not construe a clear and unambiguous will in such a way as to rewrite it . . . ." *Id*. (quotation marks and citation omitted). Moreover, "[t]he rules in interpreting contracts are equally applicable to interpreting wills." *Czapp v Cox*, 179 Mich App 216, 219; 445 NW2d 218 (1989). Language in a contract is interpreted according to its ordinary and plain meaning, and technical or constrained constructions must be avoided. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491-492; 579 NW2d 411 (1998). A contract is ambiguous when the words employed can reasonably be understood in different ways. *Id*. at 491. "Courts are not to create ambiguity where none exists." *Id*.

---

[3] Appellees have not disputed that Costello had a residence and office in Illinois.

The notice provision of MCL 700.7108 applies *except as provided otherwise* by the Trust itself. MCL 700.7105(1). We conclude that the Trust is unambiguous in stating that the trustee can change the principal place of administration of the Trust by simple "notice" to each beneficiary. It is not disputed that the beneficiaries did, indeed, receive notice of the change. Rules of trust construction indicate that Costello effectively transferred the principal place of administration of the Trust to Illinois.

The parties dispute the meaning of two unpublished cases discussed by the lower court: *In re Seneker Trust*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2015 (Docket Nos. 317003 and 317096), and *In re Elizabeth Doll Trust*, unpublished per curiam opinion of the Court of Appeals, issued October 16, 2018 (Docket No. 341788). In *In re Seneker Trust*, unpub op at 2, JP Morgan Chase Bank, N.A., was the successor trustee after the death of the settlor of the trust in question. The settlor had been a resident of Florida. *Id*. at 1-2. Certain trust beneficiaries (the appellees) sought removal of JP Morgan as the trustee by filing a petition in the Oakland County Probate Court in Michigan. *Id*. at 2. The appellant argued that the Michigan court lacked subject-matter jurisdiction, stating that Florida law applied and that the principal place of administration of the trust had not been appropriately changed to Michigan. *Id*. This Court stated:

> Appellees point out that MCL 700.7203(1) grants Michigan probate courts broad and exclusive jurisdiction over "proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust . . . ." However, MCL 700.7205(1) provides that, "[i]f a party [such as appellant in this case] objects, the court shall not entertain a proceeding under [MCL 700.7203] that involves a trust that is registered *or that has its principal place of administration in another state*[.]" (Emphasis added). Appellant argues, and we agree, that the Trust's principal place of administration is in Florida and, therefore, the Michigan probate court was without subject-matter jurisdiction over appellees' petition. [*In re Seneker Trust*, unpub op at 2 (alterations in original).]

The trust in question stated:

> "<u>Changing Situs of Trust</u>. The TRUSTEE shall have the power to transfer or relocate the Trust's principal place of administration and the situs of the property of any trust created under this Agreement to another county or state or to a jurisdiction outside of the United States. If necessary, the TRUSTEE may commence appropriate judicial proceedings to effectuate a transfer of situs. . . ." [*Id*. at 3 (alteration in original).]

The appellant argued that JP Morgan, to change the principal place of administration of the trust, needed to comply with Florida trust law regarding notice. *Id*. On the other hand, the "[a]ppellees argue[d] that such notice was not required because the above provision of the Trust trumped the notice requirements of FSA 736.0108(6) and (7)." *In re Seneker Trust*, unpub op at 4. This Court rejected the appellees' argument, stating that (1) there was no language in the trust stating that the statutory notice requirements did not apply, (2) the trust had been amended to omit language that had given the trustee " 'absolute discretion' " to change the situs of the trust, (3) the very language relied on by the appellees made reference to using the judicial process to effectuate

-6-

a transfer, and (4) the settlor had changed the definition of the governing " 'state' " in the trust from Michigan to Florida. *Id*. at 4-5 (emphasis removed).

In *In re Doll Trust*, unpub op at 1, a successor trustee purportedly changed the situs of a trust from Michigan to Florida. The appellant attempted to remove the trustee by filing a petition in a Michigan court, but the court ruled that it lacked subject-matter jurisdiction because the trustee had had the authority to transfer the situs of the trust at her discretion. *Id*. at 2. This Court stated:

> Appellant asserts that because [the trustee] improperly notified beneficiaries of her transfer of the principal place of administration of the Trust to Florida in 2015, the transfer of situs did not occur, and the probate court therefore improperly concluded that it did not have jurisdiction to hear her petition for instruction. Appellant contends that [the trustee] was required to comply with the Michigan Trust Code, MCL 700.7101 *et seq*., and specifically MCL 700.7108(3)-(5) . . . . [*In re Doll Trust*, unpub op at 3.]

The trust in that case stated:

> "8.9 Situs of Trust, Michigan Law Controls, and Exemption from Registration: This trust shall not be subject to the registration requirement imposed by any State and shall be administered free from the active supervision of any court. Trustee is directed to take any and all action, if any, necessary to exempt the Trust from registration. Michigan law shall be applied to interpret this document and the situs of this Trust shall be in Michigan, *provided however, Trustee may change the situs and governing state law in Trustee's sole discretion*. [Emphasis added.]" [*Id*. at 4.]

This Court ruled:

> As appellees note, the requirements of MCL 700.7108(3) and (5), governing a transfer of the principal place of administration of a trust, apply only if a trust is silent as to how a trustee may change the principal place of administration of the trust. MCL 700.7105(1) provides, "*Except as otherwise provided in the terms of the trust*," the Michigan Trust Code "governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a trust beneficiary." (Emphasis added.) MCL 700.7105(2) further provides that, with certain enumerated exceptions that do not apply in this case, "[t]he *terms of a trust prevail* over any provision of this article . . . ." (Emphasis added.) When interpreting the meaning of a trust, this Court must ascertain and abide by the intent of the settlor. We must look to the words of the trust itself. The intent of the settler is to be carried out as nearly as possible.
>
> Because the Trust agreement governs the change of situs, the probate court was correct to conclude that [the trustee] was not required to provide the Trust's beneficiaries notice of her intent to move the Trust's situs in accordance with the Michigan Trust Code. Appellees were empowered by the Trust agreement to change the principal place of administration of the trust to Florida at their sole

discretion. Because the proceeding involved a trust "that has its principal place of administration in another state," the probate court properly concluded that it could "not entertain" the proceeding and dismissed appellant's petition for instruction. MCL 700.7205(1). [*In re Doll Trust*, unpub op at 4 (quotation marks and citations omitted; first brackets in original).]

Unpublished opinions are not binding on this Court but may be viewed as persuasive. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). We find the reasoning in *In re Doll Trust* persuasive. The Court in that case stated that "because the Trust agreement governs the change of situs, the probate court was correct to conclude that [the trustee] was not required to provide the Trust's beneficiaries notice of her intent to move the Trust's situs in accordance with the Michigan Trust Code." *In re Doll Trust*, unpub op at 4. Here, the Trust governs the change of situs. While it is true that the Trust in the present case does not include the "sole discretion" language used in *In re Doll Trust*, it does, as noted, state, in the article of the Trust labeled "administrative powers":

> Trustee has the power to perform every act that a reasonable and prudent investor would perform incident to the collection, preservation, management, use, and distribution of the trust assets to accomplish the desired result of administering the trust legally and in the best interest of the trust beneficiaries, *without the approval of any court or beneficiary*. . . . Trustee possesses . . . the authority to:
>
> * * *
>
> *Change the situs and principal place of administration of any trust under this Agreement by notice to each current beneficiary*[.] [Emphases added.]

The Trust also contains the following provision:

> 9.1 **Governing Law.** Trustee accepts the trust established by this Agreement under Michigan law. All questions concerning its validity, construction, and administration, except as otherwise specifically provided, shall be determined under Michigan law. To govern the administration of any trust under this Agreement, however, *Trustee may elect to apply the law of another state where Trustee resides or has a place of business*. Trustee may not elect to apply another law if the election would modify beneficial interests or limit the liability of Trustee. Trustee must give notice of an election to change governing law to each beneficiary entitled to an annual account for that trust. The effective date of the change of governing law shall be the date of or specified in the notice. [Emphasis added.]

In addition, MCL 700.7105(2) states:

> The terms of a trust prevail over any provision of this article except the following:
>
> (a) The requirements under sections 7401 and 7402(1)(e) for creating a trust.

(b) Except as otherwise provided in sections 7703a and 7703b, the duty of a trustee to administer a trust in accordance with section 7801.

(c) The requirement under section 7404 that the trust have a purpose that is lawful, not contrary to public policy, and possible to achieve.

(d) The power of the court to modify or terminate a trust under sections 7410, 7412(1) to (3), 7414(2), 7415, and 7416.

(e) The effect of a spendthrift provision, a support provision, and a discretionary trust provision on the rights of certain creditors and assignees to reach a trust as provided in part 5.

(f) The power of the court under section 7702 to require, dispense with, or modify or terminate a bond.

(g) The power of the court under section 7708(2) to adjust a trustee's compensation specified in the terms of the trust that is unreasonably low or high.

(h) The obligations imposed on a trust director in section 7703a(4) and (5).

(i) The duty under section 7814(2)(a) to (c) to provide beneficiaries with the terms of the trust and information about the trust's property, and to notify qualified trust beneficiaries of an irrevocable trust of the existence of the trust and the identity of the trustee.

(j) The power of the court to order the trustee to provide statements of account and other information under section 7814(4).

(k) The effect of an exculpatory term under section 7703a(5)(b) or 7908.

(*l*) The effect of a release of a trustee or trust director from liability for breach of trust under section 7703a(8).

(m) The rights under sections 7910 to 7913 of a person other than a trustee or beneficiary.

(n) Periods of limitation under this article for commencing a judicial proceeding.

(o) The power of the court to take action and exercise jurisdiction.

(p) The subject-matter jurisdiction of the court and venue for commencing a proceeding as provided in sections 7203 and 7204.

(q) The requirement under section 7113 that a provision in a trust that purports to penalize an interested person for contesting the trust or instituting another proceeding relating to the trust shall not be given effect if probable cause

exists for instituting a proceeding contesting the trust or another proceeding relating to the trust.

(r) The requirement under section 7703b(2)(d) regarding the eligibility of a trust's sole beneficiary to be a separate trustee as that term is defined in section 7703b.

The exceptions do not encompass a change to the principal place of administration under MCL 700.7108.

Further, it seems apparent that *In re Seneker Trust* is distinguishable from the present case because in that case, the trust had been amended to omit language that had given the trustee " 'absolute discretion' " to change the situs of the trust and the very language relied on by the appellees made reference to using the judicial process to effectuate a transfer. *In re Seneker Trust*, unpub op at 4-5 (emphasis omitted).

Appellees in the present case note that the Trust had been registered in Michigan. MCL 700.7204 states:

(1) Except as otherwise provided in subsection (2), venue for a proceeding involving a trust is as follows:

(a) For a proceeding under section 7203 involving a registered trust, in the place of registration.

(b) For a proceeding under section 7203 involving a trust not registered in this state, in any place where the trust properly could be registered and, if the trust is created by will and the estate is not yet closed, in the county in which the decedent's estate is being administered.

(c) As otherwise specified by court rule.

(2) If a trust has no trustee and has not been registered, venue for a judicial proceeding for the appointment of a trustee is as follows:

(a) In a county in this state in which a trust beneficiary resides.

(b) In a county in which any trust property is located.

(c) If the trust is created by will, in the county in which the decedent's estate was or is being administered.

(d) As otherwise provided by court rule.

Venue is a separate question from jurisdiction. Venue assumes the existence of jurisdiction. See, generally, *People v Gayheart*, 285 Mich App 202, 216; 776 NW2d 330 (2009). This statute does not render invalid the analysis above regarding why the transfer of situs was effective.

Appellees cite MCL 700.7202(1), which states:

> By registering a trust or accepting the trusteeship of a registered trust or a trust having its principal place of administration in this state or by moving the principal place of administration to this state, the trustee submits personally to the jurisdiction of the courts of this state regarding any matter involving the trust. Notice of a proceeding shall be given to the trustee in accordance with section 1401 at the trustee's address as stated in the registration or as reported to the court and to the trustees address then known to the petitioner.

This provision is not dispositive because personal jurisdiction and subject-matter jurisdiction are two different concepts. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). For example, a person may submit to or waive personal jurisdiction, but not subject-matter jurisdiction. See *id*. This statute also does not render invalid the analysis above regarding why the transfer of situs was effective.

We conclude that, under principles of statutory and trust construction, under the plain language of the Trust, and under the persuasive reasoning of *In re Doll Trust*, Costello effectuated a change to Illinois of the principal place of administration of the Trust and that the court had no authority to invalidate this transfer.[4]

Once again, MCL 700.7205(1) provides:

> If a party objects, the court shall not entertain a proceeding under section 7203 that involves a trust that is registered or *that has its principal place of administration in another state*, unless either of the following applies:
>
> (a) All appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration.
>
> (b) The interests of justice would otherwise be seriously impaired. [Emphasis added.]

The trial court stated that the Clinton Probate Court had jurisdiction, alternatively, under MCL 700.7205(1)(b), stating:

> In the case at bar, the proceeding in question involves a breach of trust action, impacting whether Richland Animal Rescue remains a charitable trust beneficiary under the Trust Agreement. Almost all of the property of the trust is located in mid-Michigan. (The only property outside of Michigan is a residence in Florida.) The underlying actions of the Trustee took place in Michigan. Richland Animal Rescue is located in Michigan. The Trust Agreement is registered in

---

[4] The issue might more properly be viewed as one of simple trust construction as opposed to an issue of subject-matter jurisdiction. The upshot, however, is that the trial court erred by concluding that MCL 700.7108 served to invalidate the transfer.

-11-

Clinton County, Michigan, and the Trust remains a registered Michigan charitable trust with the Attorney General's office. Illinois has no connection to Eyde, the Trust, or the Trust property. It would be an inconvenient forum to force Richland Animal Rescue to defend its status as a Trust beneficiary in Illinois. Therefore, Michigan is the more appropriate forum to serve the interests of justice in this matter.

The court stated that Costello's motion for summary disposition was denied and that the Clinton Probate Court "retains subject matter jurisdiction over the Richland Animal Rescue's Objection to the transfer of the situs of the Trust Agreement."

The problem with the trial court's reliance on MCL 700.7205(1)(b) is that *the only issue before the court at the time of its ruling was Richland's objection to the transfer of the place of administration to Illinois*. As discussed, Costello acted within his power in making the transfer and the transfer is not subject to invalidation. Whether the probate court could entertain subsequently raised issues, such as whether Costello should be removed as trustee, *despite the transfer to Illinois*, is a separate question according to statutory language. See MCL 700.7205(1).[5] The order on appeal in Docket No. 355947 is the lower court's December 22, 2020 order, issued *before* Richland and Baker filed petitions seeking removal of Costello as trustee. Costello, in his motion for summary disposition, focused merely on whether the transfer of the situs had been proper under the Trust agreement *because that was the sole issue being raised at the time*. The court prematurely made a ruling regarding MCL 700.7205(1)(b), without Costello's having had an opportunity to argue and fully develop his position that the interests of justice would not be seriously impaired if the court were to conclude that the various issues raised about Costello's substantive actions as trustee should not be entertained in Michigan. MCL 700.7205(1). A motion for summary disposition under MCR 2.116(C)(4) can involve factual elements to be analyzed by a court. *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 175-176; 756 NW2d 483 (2008). Costello has not been given an adequate opportunity to present facts in support of his position that it would not seriously impair the interests of justice if the petitions filed after issuance of the order on appeal in Docket No. 355947 were litigated in Illinois.[6]

It must be reemphasized that the sole question facing the lower court was whether Costello had effectuated a transfer of the principal place of administration of the trust. Richland's requested relief in its petition was to "enjoin[] . . . Costello . . . from transferring the principal place of administration of the Trust to Illinois." The facts Costello needed to present to address this question, in light of the plain language of the Trust, were different in quality and quantity from the facts Costello would need to present to effectively address whether the interests of justice would be impaired if the beneficiaries' other petitions were litigated in Illinois. For example, Costello,

---

[5] Removal of the trustee was the type of question being analyzed in the *Doll* and *Seneker* cases. *In re Doll Trust*, unpub op at 2; *In re Seneker Trust*, unpub op at 2.

[6] Costello argues about Richland's standing. But Baker, too, filed a petition alleging impropriety by Costello and seeking his removal as trustee. There is no question whatsoever regarding Baker's standing. Also, as discussed *infra* in connection with Docket No. 356500, Richland is a beneficiary of the Trust, and MCL 700.7203(1) speaks to proceedings brought by beneficiaries.

in addressing the transfer issue, did not need to go into detail regarding how many potential witnesses might be located in Chicago because the transfer analysis was primarily an issue of statutory and trust interpretation. Costello simply stated that the Trust's place of administration was Illinois and that the probate court lacked jurisdiction to hear a challenge to the trustee's transfer decision. Whether MCL 700.7205(1)(b) should be used for further petitions is a question for further proceedings.

Our conclusion that Costello did not need to follow the notice provision of MCL 700.7108 to effectuate the transfer renders moot his argument that applying the notice requirement of that statute would result in a Contract Clause violation.[7] See US Const, art I, § 10, and Const 1963, art 1, § 10.

## II. DOCKET NO. 356500

Docket No. 356500 concerns the March 3, 2021 order for Costello to turn over the form 706. Costello argues that Richland, in particular, had no standing to request the form 706; that the court should not have ordered the turning over of the form 706 at all; and that the court should have included a confidentiality provision in its order.

Issues of standing are reviewed de novo. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011). This issue also involves the interpretation of MCL 700.7814, regarding the provision of information to beneficiaries of trusts by trustees. As noted, this Court reviews de novo issues of statutory construction. *Elba Twp*, 493 Mich at 278. The decision regarding whether to issue a protective order is subject to review for an abuse of discretion. See, generally, *PT Today, Inc v Comm'r of Office & Fin & Ins Servs*, 270 Mich App 110, 151; 715 NW2d 398 (2006) (discussing discovery).

---

[7] At any rate, this particular argument is not preserved and is therefore subject to plain-error review. See, e.g., *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A primary consideration in analyzing a Contract Clause claim is whether there is, in fact, a contractual relationship. *Aguierre v Michigan*, 315 Mich App 706, 716; 891 NW2d 516 (2016). Costello has failed to provide any Michigan authority for concluding that a trust constitutes a contract and has therefore failed to establish any plain error. See also *Tunick v Tunick*, 201 Conn App 512, 525-526; 242 A3d 1011 (2020) (discussing caselaw indicating that a trust is not a contract and stating that "the undertaking between the settlor and trustee is not properly characterized as contractual and does not stem from the premise of mutual assent to an exchange of promises") (quotation marks and citation omitted). Additionally, in *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005), the Court, in discussing a Contract Clause issue, noted that state policies do not normally create contractual relationships because they can be repealed or revised. In the present case, the Trust did not become irrevocable until Eyde's death, which was *after* the enactment of MCL 700.7108. An application of *Studier* by analogy is a further indication that no plain error is apparent in connection with Costello's constitutional argument.

As an initial matter, appellees raise a jurisdictional challenge, arguing that Costello could not appeal the March 3, 2021 order as of right. We agree that an appeal as of right was not available. However, we are, for purposes of judicial economy, empowered to treat the claim of appeal as an application, grant the application, and address the issues raised. *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012). We choose to do so.

Costello contends that the trial court had no authority to order that the tax return be given to Richland, specifically, because Richland was only a "contingent beneficiary" and had no standing to request it.[8] Richland, under the Trust, was to be given monies after a certain sum (i.e., $11,400,000) had been distributed to Baker, Christopher, Hildebrand, and Unis. A Trust inventory listed the net valuation of the Trust, as of February 29, 2020, as $174,869,000.

In *In re Childress Trust*, 194 Mich App 319, 321; 486 NW2d 141 (1992), the petitioner filed a petition for supervision of a trust. She claimed that "the probate court erred in characterizing her interest as contingent, and in denying on that basis her request for information and an accounting." *Id*. This Court stated:

> It appears [] that the trust provides for discretionary payments from principal and income for the support of a lifetime beneficiary and for the remainder to go to petitioner and her father. The trust instrument provides for alternative distribution of the remainder interests in the event the remaindermen do not survive the life beneficiary. [*Id*.]

The trustee argued that only presently vested beneficiaries were entitled to information. *Id*. at 322. This Court stated:

> The probate court and the trustee have miscast petitioner's interest in the trust as a contingent interest in the remainder. The trustee relies on two "contingencies": (1) that petitioner must survive the primary income beneficiary, and (2) that there must be assets left in the trust after the primary beneficiary's death. These are not conditions that render a remainder interest contingent rather than vested.
>
> A remainder interest vests upon the death of the grantor, not upon the death of the life tenant. The possibility of the death of the remainderman before the life tenant does not prevent taking a vested remainder.
>
> A remainder interest that becomes possessory upon the death of the lifetime beneficiary is vested even if the holder of the life interest may invade the principal and has discretion to exhaust the corpus. Where the trust provides that the trustee may invade the entire corpus of the estate if necessary to support and provide medical care for the income beneficiary, the persons named as being entitled to the corpus upon the death of the income beneficiary have a vested remainder interest

---

[8] It is not disputed that a request derived from proper standing was made by other beneficiaries.

-14-

in the corpus of the trust subject to defeasance if the entire corpus is used as described. [*Id*. at 323 (citations omitted).]

MCL 700.7814 states, in part:

(1) A trustee shall keep the qualified trust beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. *Unless unreasonable under the circumstances, a trustee shall promptly respond to a trust beneficiary's request for information related to the administration of the trust*.

(2) *A trustee shall do all of the following*:

(a) *Upon the reasonable request of a trust beneficiary, promptly furnish to the trust beneficiary* a copy of the terms of the trust that describe or affect the trust beneficiary's interest and *relevant information about the trust property*. [Emphases added.]

These statutes refer to responding to a "trust beneficiary's" request, not just to a "qualified trust beneficiary's" request.[9] Applying the reasoning of *Childress*, Richland was a beneficiary and no standing problem is apparent.

Costello argues that the March 3, 2021 order was improper because the proceedings in the probate court were void ab initio. He states that Richland had no standing in the first instance to bring the objection that began the case in the probate court and that the objection Richland made regarding the situs was an improper and ineffective commencement of proceedings. Even assuming we adopt the reasoning of the non-precedential unpublished opinion that proper jurisdiction was not invoked by way of Richland's initial objection, there was an additional petition for removal of the trustee filed by Baker, an admitted primary beneficiary of the Trust. Baker

---

[9] MCL 700.7103(g) states:

"Qualified trust beneficiary" means a trust beneficiary to whom 1 or more of the following apply on the date the trust beneficiary's qualification is determined:

(*i*) The trust beneficiary is a distributee or permissible distributee of trust income or principal.

(*ii*) The trust beneficiary would be a distributee or permissible distributee of trust income or principal if the interests of the distributees under the trust described in subparagraph (*i*) terminated on that date without causing the trust to terminate.

(*iii*) The trust beneficiary would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

-15-

properly set forth a basis for the court's jurisdiction. Costello's argument that the entire proceedings in the probate court must be declared a nullity at this point in time is without merit. If, upon remand in Docket No. 355947, the court entertains outstanding petitions, its order to provide Trust information would be valid.

Costello argues that the court should not have ordered that he turn over the form 706 without also ordering that recipients keep the information contained in it confidential and only share it with necessary parties such as their professional advisors and lawyers. Again, MCL 700.7814 refers to "reasonable request[s]" for information and providing information "[u]nless unreasonable under the circumstances." It is apparent that requesting a tax form setting forth all trust assets is a reasonable request by a trust beneficiary. Both Costello and creditors of Eyde expressed concern that if the appraised values of assets in the Trust were disseminated, the price of bids for the sale of those assets could be depressed, because bidders would be unwilling to bid above the appraised values. Costello misconstrues his role. He sits as a trustee with duties that run to the beneficiaries, including Richland, Baker, Hildebrand, and Unis (i.e., four of the five beneficiaries). They *are the ones standing to lose from any depression in prices*—and they simply *do not want* a confidentiality provision. (As for the banks, they are not parties to the Trust or to this case.) It is true that Christopher has not expressed an opinion one way or another regarding the confidentiality provision. However, the confidentiality issue was entrusted to the trial court's discretion. In *PT Today*, 270 Mich App at 151, this Court stated, "A trial court's decision whether to grant a protective order limiting discovery is reviewed for an abuse of discretion." Although the order at issue in the present case was not a discovery order[10] but rather an order relating to providing information to beneficiaries of a trust, *PT Today* can be applied by analogy. And, significantly, Costello himself agrees that this issue should be reviewed for an abuse of discretion. The beneficiaries have every reason to protect their shares. Costello offers speculative argument that the absence of a nondisclosure provision would likely lead to a depression in property sales price. In this circumstance we cannot conclude that the trial court abused its discretion by ordering dissemination of the form 706 without also issuing a protective order. It is also worth noting that Christopher was present at the first hearing where disclosure of the form 706 was discussed and raised no objections.

Costello contends that it was wrong of the beneficiaries to ask for provision of the form 706 from him because he held that form in his role as personal representative of Eyde's estate, not as trustee of the Trust. This argument is not persuasive. The Trust concerns how to distribute Eyde's assets after his death. Clearly, the form 706 is a relevant document for purposes of Costello's fiduciary duties as trustee, and he possessed the form 706 in his capacity as both personal representative *and* trustee.

Costello also raises an unpreserved issue about exposure of Social Security numbers. He has established no outcome-determinative plain error, see *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), in connection with this issue because it has been clearly expressed that "the . . . beneficiaries" want Social Security numbers to be redacted. For example, Richland states

---

[10] For this reason, we decline to delve into Costello's various arguments about discovery rules.

that "the Trust beneficiaries have no objection to, and, in fact, request that, Trustee redact all social security numbers appearing in Settlor's federal estate tax return."[11]

In *In re Pott*, 234 Mich App 369, 375; 593 NW2d 685 (1999), this Court noted that disclosure of tax returns can be ordered for good cause. Costello explicitly states that he does not dispute this proposition about "good cause." While it is true that there was a protective order in *Pott*, 234 Mich App at 372, the court in the present case, as discussed, did not abuse its discretion by failing to enter a protective order here.

Should the trial court conclude on remand that it is entertaining the outstanding petitions, then the order in Docket No. 356500 should be upheld.

Reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica

---

[11] To the extent Costello may be attempting to argue for further redactions, his briefing is unclear. In fact, he states that "only a protective order—combined with redaction of the Trustee's social security number—seems to proffer a workable solution." In other words, his briefing seems to indicate that he is *not* arguing for further redactions.